No. 2--05--0366          Filed: 7-17-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--277 |
| PAUL D. HOERER, | ) ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Paul D. Hoerer, appeals from his conviction after a jury trial of unlawful delivery of a controlled substance (720 ILCS 570/401(f) (West 2002)) and involuntary manslaughter (720 ILCS 5/9--3(a) (West 2002)). He contends that his counsel was ineffective for stipulating to the admission of testimony that defendant had entered into plea negotiations with the State and that the trial court committed reversible error in allowing the State to elicit testimony regarding a sexual assault allegedly committed by a codefendant. For the reasons that follow, we reverse defendant's conviction and remand the cause for a new trial.

Defendant was charged in connection with an incident in which he and several friends, including codefendant Joshua Boand, allegedly ingested methadone Boand had obtained from a methadone clinic he was attending.[1] The evidence indicated that a woman who was among the group

---

[1]Boand was tried and convicted of various crimes in connection with the same incident, but,

of friends fell unconscious and eventually died as a result of her methadone ingestion and that, if the friends had sought medical assistance on the woman's behalf on the night in question, instead of waiting until the next day, she might have survived. After hearing the evidence and deliberating, the jury convicted defendant of involuntary manslaughter and unlawful delivery of a controlled substance. Defendant was sentenced to two concurrent five-year terms of imprisonment, and, following the trial court's denial of his posttrial motion, he timely appeals.

On appeal, defendant first claims that his counsel was ineffective for stipulating to the admission of defendant's testimony, given when he testified as a prosecution witness in Board's case, that he had entered into plea negotiations with the State. As relevant here, that testimony read to the jury included the following passages from Board's defense counsel's cross-examination:

"Q. Mr. Hoerer, *** when you testified on direct examination, you have testified that you have no deal with the prosecution, is that correct, sir?

A. That's correct.

Q. In fact, you indicated that no promises have been made in any way to you, correct?

A. That's true.

Q. And as I understand the wording you used at some point was there is no hint of a deal as far as you're concerned, is that correct?

A. Yes, that's correct.

Q. Are you telling this jury, Mr. Hoerer, that the sole reason you are here is because you believe it's the right thing to do?

---

on appeal, his convictions were reversed and his case remanded for retrial. See People v. Board, 362 Ill. App. 3d 106 (2005).

A. Yes, telling the truth is the right thing to do.

Q. You are telling the jury, I take it, that you are here because of a sense of justice that you feel [the victim] is entitled to, is that correct, sir?

A. Yes, I do.

* * *

Q. Mr. Hoerer, as you sit here, isn't it a fact that you hold out some hope that by testifying in this case; by waiving your right to remain silent; by coming in here and testifying for the prosecution, you hold out the hope that you can influence them in you're your [sic] cases [that] are going to be prosecuted, yes or no?

A. Telling the truth here helps me sleep at night.

* * *

Q. Mr. Hoerer, you said that it is not on your mind nor has it entered your mind that your testimony here could in some fashion benefit you, is that correct, sir?

A. Well, I would hope that by telling the truth *** in some way, it might help my case.

* * *

Q. On May the 9th of 2003, Mr. Hoerer, you met with representatives of the State's Attorney's Office following your indictment on some of these charges, is that correct, sir?

A. I believe so. I am not sure of the date.

Q. Mr. Strickland[, the prosecutor in Boand's case,] was one of those present at that particular time, is that correct, sir?

A. Yes.

Q. And this was about a year after the events in which [the victim] died, is that correct, sir?

A. Yes.

Q. You were represented by a lawyer at that time, correct?

A. Yes.

Q. And the purpose--that was a meeting that was held in this building here, isn't that right, sir?

A. Yes, it was.

Q. That would have been, I take it, in the State's Attorney's Office, correct?

A. Yes.

Q. And the purpose of that meeting, sir, was to see if some type of plea agreement could be reached between you and the State, isn't that correct?

A. Yes.

Q. You were exploring the possibility of seeing if you could engage in some kind of an agreement that would result in the disposition of the cases that you had against you, is that correct, sir?

A. Yes, I was.

Q. You had your lawyer with you at that time, isn't that correct?

A. Yes, I did.

Q. And you were told at that time that before any subject or any type of agreement could be reached, the State would like to speak with you, isn't that correct?

A. Yes.

* * *

Q. And you were told at that time, weren't you, that whether or not an agreement will be reached would depend on the information that you provided. That's a fact, isn't it?

A. Yes.

* * *

Q. You had the benefit at that time *** of having some idea of what this investigation involved, correct?

A. Yes.

Q. You were aware at that time that there were available to you and your attorney various investigative reports that were prepared in conjunction with these events, isn't that correct, sir?

A. Yes, we had the discovery.

Q. And as part of that discovery process, I take it you, at some point, reviewed, as best you could, the various reports that were in existence at that time, isn't that correct, sir?

A. Yes, I looked them over.

Q. I take it you had an opportunity to discuss the content of those reports with your attorney?

A. Yes.

* * *

Q. And it was after you had reviewed the reports and after you had discussed it, that's when you go into the State's Attorney's Office, isn't that correct, sir?

A. Yes.

Q. That's when you say: Look. I would like to see if I could reach a plea agreement with you with respect to my cases, is that correct, sir?

A. Yes."

Defendant argues that his counsel was ineffective for stipulating to the admission of his testimony (from Boand's case) that he entered into plea negotiation discussions with the State, because, under Supreme Court Rule 402(f) (177 Ill. 2d R. 402(f)), such statements are inadmissible against a criminal defendant. To determine whether a defendant was denied the effective assistance of counsel, we apply the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by our supreme court in People v. Albanese, 104 Ill. 2d 504, 526 (1984). A defendant alleging ineffective assistance of counsel will prevail only where he shows: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; Albanese, 104 Ill. 2d at 525.

To establish deficient performance under the first Strickland prong, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. People v. Perry, 224 Ill. 2d 312, 341-42 (2007). "This means the defendant must show that counsel's errors were so serious, and his performance so deficient, that he did not function as the 'counsel' guaranteed by the sixth amendment." Perry, 224 Ill. 2d at 342. Defendant argues that his counsel's performance fell below an objective standard of reasonableness because counsel stipulated to having the above-quoted testimony read to the jury despite its prohibition under Rule 402(f). Rule 402(f) provides as follows:

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 177 Ill. 2d R. 402(f).

The supreme court's purpose in promulgating Rule 402(f) was "to encourage the negotiated disposition of criminal cases by eliminating the risk that juries will hear statements or admissions made by defendants during plea negotiations." People v. Hart, 214 Ill. 2d 490, 502 (2005). The State's primary challenge to defendant's argument is its assertion that the testimony here was not plea-related under the test articulated in Hart and People v. Friedman, 79 Ill. 2d 341 (1980), and thus did not violate Rule 402(f).

The test the State references requires that courts consider, "first, whether the accused exhibited a subjective expectation to negotiate a plea, and, second, whether that expectation was reasonable under the totality of the objective circumstances." Hart, 214 Ill. 2d at 503, citing Friedman, 79 Ill. 2d at 351. The State urges that, here, under the first prong of the above test, defendant's single reference to a plea negotiation "is not enough to demonstrate that defendant 'exhibited a subjective expectation to negotiate a plea.'" Under the second prong, the State urges that "the 'objective circumstances' show that no plea bargain was entered into by the parties" and that defendant "was testifying independently[, without any] promises or expectations."

The State's argument is misdirected. The two-prong test quoted above is used "to determine whether a particular statement is plea related." Hart, 214 Ill. 2d at 503. Here, the complained-of testimony did not relay a "particular statement" purportedly related to plea negotiations. Rather, it relayed the fact that plea negotiations took place. In Hart and Friedman, the statements were

inadmissible because they indicated the defendant's desire to enter plea negotiations. Here, the testimony admitted gave the jury prejudicial information even more directly. Rather than simply relaying a statement that indicated defendant's desire to negotiate, defendant's testimony directly stated that he in fact entered into plea negotiations. The two-pronged test the State seeks to invoke is inapposite.

Further, we reject the State's arguments that the testimony did not indicate that defendant had a subjective expectation to enter into a plea negotiation and that the expectation was reasonable under the totality of the circumstances. The testimony indicated that defendant and his lawyer met with prosecutors to discuss a plea arrangement. This testimony shows not only a subjective and reasonable belief that plea negotiations were possible, but also that defendant and the State actually entered into plea negotiations. The State's primary argument, that defendant's testimony cannot have been plea-related because there was no plea agreement, overlooks the point that, by its plain language, Rule 402(f) excludes evidence of plea discussions "[i]f a plea discussion does not result in a plea of guilty" (177 Ill. 2d R. 402(f)). Likewise, the State's contention, raised at oral argument, that there could not have been a plea negotiation here because there is no indication that the State ever made defendant an offer, misses the point. A negotiation that does not lead to an offer does not cease to be a negotiation. Defendant's testimony clearly indicates that a negotiation took place.

Based on the above discussion, we conclude that the admission of defendant's testimony regarding his attempted plea agreement violated Rule 402(f). In its brief, the State did not offer any reasonable explanation for counsel's stipulation to allow this evidence. At oral argument, the State urged that counsel's stipulating to allow the testimony could have been part of a strategy to show that

defendant was upstanding and wanted to be truthful with investigators about this incident. We reject the State's argument.

Our supreme court has noted that the prejudicial effect of allowing the type of testimony at issue here is so "devastating" that it will be considered prejudicial even in the face of overwhelming evidence against a defendant. Friedman, 79 Ill. 2d at 353. Given the unusually prejudicial nature of this testimony, we cannot agree with the State that stipulating to its admission in order to introduce defendant's assertion that he was being truthful could be a matter of sound trial strategy.[2]

After oral argument in this case, we granted the parties leave to file additional briefing so that they could address the issues in light of our explanation at oral argument that the Friedman test is inapposite. Though much of the State's supplemental briefing restates the Friedman arguments we refute above, the State also added an argument that defense counsel's failure to object to the plea-related testimony may have been part of a strategy of presenting the testimony outright instead of allowing the State to use it to impeach defendant if he were to testify. Again, however, the State's argument does not offer any strategic reason for allowing the admission of the portion of defendant's testimony relating to plea negotiations.

Because the State does not make any persuasive argument that the introduction of the specific testimony about which defendant now complains could have been part of a sound trial strategy, we

---

[2]The State does not argue, and we therefore do not consider, that defense counsel might have concluded that, upon learning that defendant testified against a codefendant at the codefendant's trial, the jury would have assumed that defendant had brokered a deal with the prosecution, and, therefore, the admission of his testimony that he did not get a deal and was testifying out of duty to the truth would have actually decreased prejudice against him.

must conclude that counsel's assent to the admission of the testimony was, indeed, not a matter of sound trial strategy. Accordingly, we agree with defendant that, when counsel stipulated to allow defendant's testimony regarding his plea negotiations to be read to the jury, counsel's level of performance fell below an objective standard of reasonableness.

Having determined that defendant has satisfied the first prong of the Strickland analysis, we must determine whether defendant has demonstrated, under the second prong, that he was prejudiced by his counsel's below-standard performance. As defendant points out, and as we noted above, our supreme court has stated that a Rule 402(f) violation is considered so devastating and prejudicial to a defendant that it constitutes reversible error even absent a contemporaneous objection from trial counsel and even in the face of overwhelming evidence of guilt. See Friedman, 79 Ill. 2d at 353 ("The State does not argue, nor would we agree, that the admission of this testimony was harmless or that the error was waived by defendant's failure to object. This court, despite overwhelming evidence of the defendant's guilt and despite his failure to object, has recognized the devastating effect of such testimony and held that the error was so prejudicial as to require reversal ***. [Citations.] We hold that defendant was denied the right to a fair trial by the introduction of a plea-related discussion in violation of Rule 402(f)").

Though the State did not offer any argument on the prejudice prong in its initial brief, it argues in its supplemental brief that counsel's assent to the admission of the testimony in question cannot have been prejudicial, because defendant's admission in the Boand trial that he provided the victim with a controlled substance matched the admission he made in a statement to police that was also admitted into evidence in defendant's trial. Thus, the State argues, "Defendant's admission that

he had unlawfully delivered a controlled substance would have been before the jury, regardless of whether defendant's testimony at the Boand trial had been introduced into evidence."

The State's argument misses the point. The admission of defendant's prior testimony was not an all-or-nothing proposition. Even if the remainder of defendant's testimony during Boand's trial was admissible, defense counsel could have objected to the admission of the discrete portion of the testimony that defendant now argues caused him prejudice, instead of acquiescing to allowing the testimony in its entirety.

The State also argues that the testimony cannot have been prejudicial because the jury acquitted defendant of one of the charges against him. However, as defendant points out in his supplemental reply brief, defendant was still convicted of two other charges, and there is no reason to conclude that the admission of the plea-related testimony was prejudicial only as to one of the charges. Given the supreme court's statement that the admission of testimony regarding plea negotiations is "devastating," we hold that defendant was prejudiced as a result of his counsel's failure to seek a redaction before defendant's prior testimony was presented. Accordingly, we must reverse and remand this cause for a new trial.

We note that retrial in this case will not violate defendant's protections against double jeopardy, because we find that the evidence presented here was sufficient to prove defendant guilty beyond a reasonable doubt. See People v. Mink, 141 Ill. 2d 163, 173-74 (1990) (although the double jeopardy clause bars the State from retrying a defendant after a reviewing court has determined that the evidence at trial was legally insufficient to convict, that clause does not preclude retrial of a defendant whose conviction has been set aside due to an error in the proceedings leading to the conviction).

In order to obtain a conviction of delivery of a controlled substance, the State must prove that a defendant knowingly "manufacture[d] or deliver[ed], or possess[ed] with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog." 720 ILCS 570/401 (West 2002). The evidence against defendant on this count included police testimony that defendant admitted giving the victim a Vicodin pill.

In order to obtain a conviction of involuntary manslaughter, the State must prove that a defendant recklessly committed acts that "cause[d] the death [or were] likely to cause death or great bodily harm to some individual." 720 ILCS 5/9--3(a) (West 2002). Briefly, the evidence against defendant on this count included expert testimony that a methadone overdose was the cause of the victim's death, testimony from defendant's companions that they had all ingested methadone provided by Boand, testimony from defendant's companions and police (reporting statements from the companions) that defendant prevented another friend from calling 911 earlier to summon help for the victim, and paramedic and expert testimony that earlier intervention may have prevented the victim's death. The evidence on both the delivery-of-a-controlled-substance count and the involuntary-manslaughter count was sufficient to convince a rational trier of fact that the elements of the charged crimes had been proven beyond a reasonable doubt, and, therefore, retrial will not offend double jeopardy principles.

Defendant's second contention on appeal is that the trial court erred in allowing the State to elicit testimony from a witness to the effect that a codefendant had nonconsensual sex with her during the evening in question. The testimony included the following exchange:

Q. [Assistant State's Attorney] Do you remember--what do you remember after having drank the second dose of methadone?

A. Not much.

Q. What's the next thing you actually do remember after having drank that second dose of methadone?

A. Like the first time I woke up?

Q. Yes, the first time you woke up.

A. Josh being on top of me.

Q. What was he doing?

A. Trying to have sexual intercourse with me.

Q. Had you ever discussed having sexual intercourse with him that night?

A. No.

Q. Did you want to have sexual intercourse with him?

A. No."

Defense counsel objected and a sidebar was held. Defense counsel argued that the testimony about a separate crime was irrelevant to the charges against defendant and was prejudicial to him. The State responded that "the fact is that [defendant] has admitted that [Boand] said he was going to try and have sex with her that night and the methadone was a date-rape drug." The trial court overruled the objection, stating that: (1) the State had the right to ask the witness what she remembered; (2) the testimony was relevant to show motive; and (3) the testimony was not prejudicial.

Only relevant evidence may be admitted at trial, that is, evidence having a tendency to prove or disprove a fact that is of consequence to the determination of the action. People v. Harvey, 211 Ill. 2d 368, 392 (2004). "However, even when evidence is relevant, it may, in the trial court's discretion, be excluded if its prejudicial effect substantially outweighs its probative value." People

v. Lewis, 165 Ill. 2d 305, 329 (1995). Thus, in deciding whether to admit evidence, a trial court must weigh the likely prejudicial effect of evidence against its probative value. People v. Walker, 211 Ill. 2d 317, 338 (2004).

We begin with the trial court's first stated justification for allowing the evidence. Though the evidence may have been probative on the issue of the witness's memory after she had taken the drug, her recollection of events after taking the drug does not appear to have been disputed. Therefore, to the extent the witness's testimony was probative as to her recollection, its probative value did not outweigh its prejudicial effect. As for the trial court's second basis, a fair reading of the trial transcript indicates that the State argued that the testimony was relevant as establishing a potential motive for defendant's actions (or inaction) during the time that the victim was dying, and the trial court correctly found the evidence to be relevant for that reason. However, we disagree with the trial court that the evidence was not prejudicial to defendant. The evidence of Boand's sexual assault on the witness was graphic and would tend to color a juror's view of defendant, thereby arousing "prejudice and hostility on the part of the jury." See People v. Lampkin, 98 Ill. 2d 418, 428 (1983). Thus, this evidence should be admitted only if its probative value outweighs the likely prejudice. Moreover, in weighing the probative value of evidence against the likely prejudice, a trial court must consider whether the evidence could be replaced by other, less prejudicial evidence. Here, it is possible that, for the purpose of proving motive, the evidence regarding Boand's sexual assault could be replaced by less inflammatory evidence regarding Boand's conversation with defendant regarding his plans to have sex with the witness. See Walker, 211 Ill. 2d at 339 ("the prosecution has no entitlement or right to present evidence that is unfairly prejudicial when equally probative,

nonprejudicial evidence is available and will serve the same purpose"). If this issue arises again on remand, the trial court should proceed in a manner consistent with this opinion.

For the reasons given, we reverse the judgment of the circuit court of Lake County and remand the cause for retrial.

Reversed and remanded.

HUTCHINSON and GILLERAN JOHNSON, JJ., concur.