2021 IL App (1st) 180489-U

No. 1-18-0489

Order filed January 22, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 16 CR 10918 |
| DERRICK ORR, | ) ) | Honorable James Karahalios, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.

Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse and remand defendant's conviction for aggravated battery and retail theft because the trial court abused its discretion when it denied defendant's request for a continuance, for the purpose of retaining new counsel, without making a sufficient inquiry.

¶ 2    Following a jury trial, Derrick Orr was found guilty of aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2016)) and retail theft (720 ILCS 5/16-25(a)(1) (West 2016)) and was sentenced to consecutive sentences of five years and three years, respectively. On appeal, defendant contends

the trial court: (1) denied defendant his constitutional right to his choice of counsel; (2) denied defendant a fair hearing on his post-trial motions; and (3) sentenced defendant to consecutive sentences for offenses that were part of the same transaction when consecutive sentencing was not necessary to protect the public.

¶ 3                                    BACKGROUND

¶ 4      The issues before this court do not relate to the sufficiency of the evidence, therefore we recite only those facts necessary to our disposition.

¶ 5      Defendant was charged by indictment with three counts of aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2016)) and one count of retail theft (720 ILCS 5/16-25(a)(1) (West 2016)). On August 3, 2016, the trial court appointed a public defender to represent defendant. After noting that defendant posted a $45,000-D bond, the trial court informed defendant that he did not qualify for a public defender. Instead, the trial court informed defendant that a bar association attorney would be appointed, although none were available at that time. It was at this point, that defendant first requested to retain an attorney of his own choosing. Thus, the matter was continued for defendant to retain a private attorney.

¶ 6      On September 8, 2016, the trial court asked defendant if he was able to retain a private attorney. Defendant stated that he retained John Kirkwood, who was unable to make that court date because he had to attend court at another location. Defendant relayed to the trial court that Attorney Kirkwood was seeking a "long date" to appear. The trial court noted that defendant already had a month to retain a private attorney, so he decided to continue the proceedings for status on the filing of an answer and pretrial motions. The continuance date of October 11, 2016 was based on the public defender's availability.

¶ 7 On October 11, 2016, Orlando Gonzalez (Attorney Gonzalez) appeared as defendant's counsel from the firm Bryant Gomez and Associates (Gomez Firm). Discovery was previously completed, and Attorney Gonzalez acknowledged receipt of all discovery from the public defender. Nothing was prepared to be tendered to the court by either the public defender or Attorney Gonzalez. Attorney Gonzalez sought a status date so that she would have time to review the evidence. The trial court denied the request and set a continuance date for October 31, 2016, for defendant's answer and pretrial motions.

¶ 8 On October 31, 2016, Attorney Gonzalez filed an answer to the State's pretrial motion. Attorney Gonzalez sought additional discovery from the State, regarding surveillance of inside the Target store, which was not provided. Attorney Gonzalez informed the trial court that the videos that were tendered were only of the outside of the Target store. The State sought a continuance to see if videos of the inside of the store existed. The matter was continued to November 21, 2016, for discovery status regarding videos of the inside of the Target store.

¶ 9 On November 21, 2016, Attorney Gonzalez acknowledged receipt of additional video evidence tendered by the State. He informed the trial court that defendant was receiving a mental health evaluation in early January. The trial court asked Attorney Gonzalez to pick a continuance date, and Attorney Gonzalez selected January 23, 2017.

¶ 10 On January 23, 2017, Cinthya Lee (Attorney Lee) appeared on behalf of defendant. Attorney Lee informed the trial court that the video evidence tendered on the last court date from the State was duplicative of the evidence previously tendered. No other videos were available, according to her conversations with the State, therefore, discovery was complete. Additionally, Attorney Lee informed the trial court that defendant was scheduled to have a mental health evaluation after that court date. The mental health evaluation was ordered in relation to a separate

unrelated criminal matter that defendant had pending in DuPage County. The court continued the case to March 2, 2017, for status regarding discovery.

¶ 11    On March 2, 2017, Attorney Gonzalez appeared and informed the court that defendant requested a 402 conference. Before admonishing defendant, the trial court asked if there was an issue as to competency. Attorney Gonzalez stated there were no issues as to competency. The trial court admonished defendant, and the 402 conference was held. Afterwards, Attorney Gonzalez told defendant the trial court's recommendation. Attorney Gonzalez stated defendant wanted some time to "talk to his dad about – and settle some affairs, also talk to his therapist at Mercy Hospital, but, most importantly, talk to his attorney in DuPage." The trial court asked Attorney Gonzalez how much time he would need. Attorney Gonzalez sought the date of April 6, 2017, since defendant had a court date in DuPage County in the middle of March. The trial court denied the continuance request and said he would prefer to continue the matter to March 30, 2017.

¶ 12    On March 30, 2017, Bryant Gomez (Attorney Gomez) appeared on behalf of defendant and sought leave to withdraw as counsel for defendant. The trial court noted the case would have to go back to a public defender if this happened. Attorney Gomez informed the trial court that defendant was in the process of retaining new counsel. Attorney Gomez stated that defendant was seeking the help of his father to retain new counsel and he was out of town, "for a few days, a week."

¶ 13    The trial court noted that the case at that time had already been conferenced, an offer was extended, and the case was scheduled for either a plea or setting trial. It found there was no reason to allow counsel to withdraw when they were on "the eve of disposing of this case whether it's a plea or its's a trial." At that point, Attorney Gomez sought an additional continuance. The trial court confirmed with the defendant that the offer was rejected and proceeded to set the proceedings

for trial. Defendant attempted to speak to the trial court and was told to speak through his lawyer. Defendant responded that his attorney just withdrew. The trial court stated he did not withdraw because he did not allow him to. Defendant stated that he found his attorney ineffective and did not want him to take the matter to trial. The trial court stated, "you're free to replace him any time you wish, sir." The trial court set a continuance date for April 24, 2017 for the remaining pretrial motions. He anticipated selecting a jury and conducting a trial from April 25 to April 26, 2017.

¶ 14 Attorney Gomez reiterated to the trial court that he believed his client was seeking to terminate his services, but he would nevertheless be available on the scheduled court date. The trial court responded by stating,

"THE COURT: Well, he's facing trial in less than a month. And he's going to go to trial in less than a month, Mr. Orr, I cannot force you to have an attorney that you don't want. But the alternative is that you either have another attorney who is ready to go to trial on the 24th, or you're going to have to represent yourself. You're not going to get an attorney to come in here and say that he wants to represent you, but he needs a continuance of the case because that's not going to happen. This case is not going to be delayed in that fashion."

¶ 15 Defendant informed the court that he felt he was endangered because he was threatened and promised things. Afterwards, the following exchange occurred:

"THE COURT: All right. So, Mr. Orr, here's the thing, you can fire your lawyer if you wish. But I want you to understand what's involved if you do fire your lawyer. And what's involved is that you have a trial date of April the 24th. Today is March the 30th. That's less than a month from now. You have a choice. If you fire this lawyer, you either have to come in with a lawyer who will be ready to go to trial on April the 24th, or you will have to represent yourself at trial on April the 24th.

THE DEFENDANT: I have mental health issues. I'm in no state to represent myself.

THE COURT: Say that again?

THE DEFENDANT: I have mental health issues. I'm in no state to represent myself. But when I've been threatened and promised certain things -

THE COURT: I don't want to hear this at the moment. This is not the issue. You've already stated that. Now, if you don't feel that you can represent yourself, then it would be most unwise, in my opinion, for you to dismiss your lawyer."

¶ 16     Attorney Gomez then informed the court of the mental health evaluation in DuPage County resulted in defendant not qualifying for any mental health treatment alternatives. Defendant corrected Attorney Gomez, who relayed to the trial court that there has been a finding of unfitness in DuPage County.

¶ 17     The trial court informed defendant that because he is out on a $45,000 D bond and posted $4,500, he was not entitled to a public defender. The trial court then asked defendant if it was his wish to represent himself and fire his lawyer? Defendant responded no, and the case was continued to April 24, 2017.

¶ 18     On April 24, 2017, defendant informed the trial court that he had not spoken to anyone from the Gomez Firm. Defendant attempted to tender a termination letter for counsel on record, however, the trial court requested that he wait for his attorney. Attorney Lee appeared and informed the court that the Gomez Firm had not prepared for a trial, Attorney Gomez and defendant had a breakdown in communication, and Attorney Gomez was with his family since his wife just delivered a baby.

¶ 19     Attorney Lee acknowledged receipt of two documents from defendant. She described the first as an April 6th hospitalization that happened at Mercy Hospital and another for April 22nd,

where he was diagnosed with having post-traumatic stress disorder. Attorney Lee relayed to the trial court that defendant informed her that he was medicated with anti-anxiety medications that were prescribed during the April 22nd hospitalization.

¶ 20    The trial court inquired about the whereabouts of Attorney Gonzalez. Attorney Lee stated that he consciously stepped away from the case given the accusations defendant was making against him and that Attorney Gomez had taken his place. Attorney Lee renewed the motion to withdraw and noted that defendant presented a letter seeking to terminate the Gomez Firm's representation. Attorney Lee described the contentious relationship between defendant and Attorney Gonzalez as escalating in a "heated exchange" outside the courtroom between the two men.

¶ 21    The trial court responded that this was all a "stunt" orchestrated by defendant, which he attempted previously on March 30, 2017. The trial court noted that defendant was given admonishments on that date and defendant decided he would continue with the services of the Gomez Firm, which is why the case was set for trial on that day.

¶ 22    The trial court told defendant, "your choices are either to proceed with the lawyer that you have, or if you have another lawyer that's ready to step in and try this case right this minute, you can have that, or you can represent yourself. But this case is going to trial this afternoon one way or another."

¶ 23    Defendant complained of breathing problems and stated he did not understand clearly what was going on in that moment. The trial court reiterated that he had three options: (1) keep current counsel; (2) retain a different lawyer of his choice that is, "ready to go right now,"; or (3) represent himself. Defendant informed the trial court he was in no condition to represent himself at that moment. The judge asked if he had another lawyer available and defendant stated he was speaking

to Attorney Sam Amirante (Attorney Amirante). Defendant stated he would need time to close on a property, which would occur in two weeks. Defendant informed the trial court that Attorney Amirate sought $10,000 and the remainder of the bond balance that the Gomez Firm did not take. The trial court then asked if he Attorney Amirante was there and ready to go. After defendant answered no, the trial court proceeded with pre-trial matters and informed the parties that they were going to trial.

¶ 24     After receiving and reading the State's motions *in limine*, Attorney Lee again reiterated that she was not prepared to continue, answered not ready for trial, and did not respond to the State's motion *in limine*.  Thus, the trial court granted paragraphs one through four of the motion *in limine*.

¶ 25     The trial court proceeded to receive exhibits from the State and asked Attorney Lee if she had any exhibits to enter. Attorney Lee stated she knew nothing about this case and had not reviewed any evidence. The trial court noted that the State was answering ready, a jury was present, and all the witnesses were present. The trial court asked again if Attorney Lee had any exhibits, to which she again answered no.

¶ 26     Next, Attorney Lee informed the court that defendant was having an anxiety attack, could not feel his legs, could not breathe, and was seeking medical assistance. The trial court told defendant to "sit and relax." The record indicates that defendant stood up and fell backwards onto the floor, at which point medical assistance was sought for him. The trial court revoked his bail and remanded him into custody.

¶ 27     After evaluating defendant, Jim Marvin, a lieutenant with the Rolling Meadows Fire Department, informed the court that defendant's vitals were normal and that there was nothing obvious that was wrong with him.  In his opinion, there was nothing medical that would prevent

the defendant from proceeding with trial. Nevertheless, the trial court remanded defendant to Cermak Hospital for an evaluation.

¶ 28 On April 25, 2017, defendant sought to proceed *pro se* and the following conversation occurred:

"THE DEFENDANT: My family is here, sir. Can I go *pro se* at this point?

THE COURT: We went through that. See you tomorrow.

THE DEFENDANT: I'm willing to go *pro se*.

THE COURT: See you tomorrow."

¶ 29 On April 26, 2017, the trial court noted that defendant fainted in lockup and was sent to the hospital. Defendant told the court that he had witnessed a murder on April 21st which resulted in anxiety for which he was taking medication. He further stated that, while in custody, he had not received said medication until the day prior to court. Consequently, defendant indicated that at that moment, after having received his medication, he "felt great."

¶ 30 Next, Attorney Gomez informed the court that, despite their efforts, he and defendant were unable to resolve their differences. Attorney Gomez then attempted to tender defendant's letter terminating his firm's services and inform the court that defendant was seeking representation by other attorneys. The trial court responded, "[w]e went through that . . . , Mr. Amirante who wants $10,000 and they don't have it right now. I have gone through this twice with him now. We are done." The Court then reinstated defendant's bond which allowed defendant to be released from custody, so that he could obtain clothes for the trial that was scheduled for 1:30 p.m. that afternoon.

¶ 31 Later that day, Attorney Gomez and his associate Zelkjo Ivelic (Attorney Ivelic) appeared on behalf of defendant. Attorney Lee was not present. Thus, the court confirmed the procedural posture of the case for counsels. i.e. a reciprocal motion to exclude witnesses was previously

granted; the State's four paragraph motion *in limine* was previously granted[1]; the parties had no stipulations; and the State had seven exhibits. Attorney Gomez informed the court that he did not have the list of the State's witnesses, indicating Attorney Lee must have been tendered the list.

¶ 32     On April 27, 2017, the trial began. The evidence established that on June 20, 2016, defendant entered a Target store. Target employees saw defendant, via security cameras, pushing a cart with a plastic bag in it.  According to the employees, the bag appeared larger by the time defendant left the store, despite the fact that they had not observed him pay for any items. After leaving the Target store, defendant was confronted by employees about the bag. The employees discovered that the bag contained seven refrigerator water filters with a total retail value of $244.93.  To avoid being detained, defendant made physical contact with the employees.  Upon close of all evidence and arguments of counsels, the jury found defendant guilty of aggravated battery and retail theft.

¶ 33     The trial court merged all three counts of aggravated battery into one. It found the aggravated battery to be a separate occurrence from the retail theft, which it found completed once defendant left the store.  In sentencing for the aggravated battery, the court also considered the 22 convictions that were listed on defendant's presentence investigation report. Thus, the court sentenced defendant to the maximum five-year sentence with one-year supervised release and no added fine.

¶ 34     For the theft charge, the court found that defendant was ineligible for probation and had violated various court orders. Further, defendant had a previous theft charge under case number 12 C 550667. The trial court sentenced defendant to the three-year maximum with one-year supervised release and a $5,000 fine on the retail theft charge.

---

[1] After receiving and reviewing the document on this day, defense counsel had no objection.

¶ 35    The trial court reasoned that since the aggravated battery charge and retail theft charge were separate transactions, defendant would serve those sentences consecutively. Therefore, he would first serve three-years with day-to-day good conduct credit for the retail theft followed by five-years at 85 percent good conduct credit for the aggravated battery charge.

¶ 36    On September 21, 2017, Attorney Gomez and new post-trial counsel, The Burton Law Group, each appeared on behalf of defendant. The trial court had two separate motions for a new trial that were filed by each law firm. In denying both motions, the trial court stated that there was no evidence to support any grounds for a new trial. There was no evidence that there was anything physically or mentally wrong with defendant. The court stated that defendant came into the proceedings wanting to delay them for as long as possible. Specifically, it stated, "I just want to say that I find that this defendant is a pathological liar.  He has done nothing but lie about every single thing that he can to delay and postpone and derail the trial of this case."

¶ 37    On February 28, 2018, the trial court modified the aggravated battery sentence to be served at 50 percent good conduct credit. This appeal followed.

¶ 38                                ANALYSIS

¶ 39    Defendant contends that, beginning on March 30, 2017, the trial court denied his constitutional right to counsel by denying his request for a continuance, to retain new counsel, without first inquiring as to the reason why he wanted new counsel.  At that time, his then current counsel also attempted to withdraw from the case, and the trial court similarly denied that motion. Defendant contends he raised this issue again on April 24, 2017, but this time he specifically identified the attorney that he was seeking to retain.  Nevertheless, the court denied his request and trial commenced two days later.

¶ 40   The right to counsel of choice is included in a defendant's constitutional right to the assistance of counsel (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). *People v. Friedman*, 79 Ill. 2d 341 (1980). We review a trial court's decision on a motion to substitute counsel for an abuse of discretion. *People v. Jenkins*, 2020 IL App (1st) 172422, ¶ 14. "It is within the trial court's discretion to determine whether the defendant's right to selection of counsel unduly interferes with the orderly process of judicial administration." *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008). The determination of whether to deny a continuance turns on the particular facts of this case. *Id*. No abuse of discretion can be found when the trial court denies a motion if that counsel is not specifically identified and does "not stand ready, willing and able" to make an appearance on behalf of defendant. *People v. Burell*, 228 Ill. App. 3d 133, 142 (1992).  However, even if a counsel is unidentified, a trial court must inquire, into whether the request is to actually obtain substitute counsel or a delaying tactic, for the denial to be proper. *People v. Adams*, 2016 Il App (1st) 13135, ¶ 15.

¶ 41   Certainly, a trial court must balance the defendant's right to counsel with the need for efficient and effective administration of justice. *Id*. at 13. Factors the trial court should consider include (i) defendant's articulation of an acceptable reason for desiring new counsel, (ii) defendant's continuous custody, (iii) defendant's efforts in obtaining new counsel, (iv) defendant's cooperation with current counsel, and (v) the length of time current counsel represented defendant. *Id*. at 15.

¶ 42   Here, the trial court did not appear to have considered any of the factors necessary to balance defendant's right to counsel with the efficient and effective administration of justice.  On March 30, 2017, when defendant requested a continuance to retain private counsel, the trial court never inquired as to why defendant was seeking new counsel. The trial court asked whether there

was an attorney present, at that moment, that would represent defendant. Without inquiring into why defendant was seeking new counsel, the court stated that the continuance request was simply a delay tactic and that he would not grant the continuance because a plea had been offered earlier that month on March 2, 2017 and that the case had already been delayed for "many months."

¶ 43    On April 24, 2017, defendant again raised the issue through Attorney Lee, who was standing in for Attorney Gomez. Defendant brought a letter terminating Gomez's office and Attorney Lee renewed her request to withdraw. Again, the trial court did not inquire into the reason for the request and asked defendant if he had another attorney present. Defendant informed the trial court that the new counsel was not present and proceeded to indicate the name of the attorney and how he planned to pay the required retainer. The trial court noted that prospective counsel was not present and attempted to proceed to trial. However, despite the trial court's efforts to proceed with trial, the trial was continued to the next day because: (1) attorney Lee had not reviewed the evidence and was not prepared and (2) defendant fell down in court which required the Rolling Meadows Fire Department to be called.  This, the judge believed was a "a show for us to try to delay and prevent progress on the case."

¶ 44    The trial court seemed more concerned with moving the case forward than defendant's right to counsel.  Although it is true that the case was continued for months, most of those continuances up to that point, were not directly attributable to defendant.  At the cases inception, on August 3, 2016, the trial court would not allow the defendant to have a public defender and told him to retain a bar association attorney. No bar association attorney was present on that date and defendant took it upon himself to retain his own private counsel. On the next court date, September 6, 2016, defendant retained counsel who could not attend because of another pending court date that conflicted. The trial court then continued the matter to October 11, 2016, based on the

availability of the public defender who stood in for the private counsel he retained. The subsequent continuances were due to discovery matters and defendant taking a few weeks to consider the plea. It is also notable that on many court dates where the Gomez Firm was present, the associates who appeared had not reviewed all the evidence in this case or the pre-trial motions of the State and consistently attempted to terminate their representation. The procedural history of this case goes against the finding that the continuance was a tactic to delay the proceedings. *Adams*, 2016 Il App (1st) 13135, ¶ 17.

¶ 45     We find the trial court abused its discretion in denying defendant's motion for continuance to retain private counsel. On March 30, 2017, the trial court only asked if defendant had any counsel present to step in at that moment. On April 24, 2017, the trial court asked if defendant had any counsel and if counsel was present. The court made no inquiry into why defendant wanted new counsel, the efforts he made in seeking new counsel, and whether he had been cooperative with his counsel. *Adams*, 2016 Il App (1st) 13135, ¶ 13. Based on the particular facts of this case, we conclude that the trial court abused its discretion in making its ruling without the benefit of conducting an inquiry into the circumstances and purposes of defendant's request on March 30, 2017. *Id*. at 15.

¶ 46                                    CONCLUSION

¶ 47     Accordingly, we reverse and remand for a new trial.

¶ 48     Furthermore, this court has within its discretion the power to reassign a matter to a new judge on remand. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).  Here, the trial judge made disparaging comments throughout the proceedings, including but not limited to referring to defendant's in court medical condition as a "stunt" to continue the trial; continuously attempting to force a trial when defendant's counsel repeatedly stated they were unprepared and had not reviewed the evidence;

and calling defendant a "pathological liar." Therefore, we conclude that in the interest of justice and to avoid any suggestion of unfairness, this case must be transferred to another trial judge on remand. *People v. McAfee*, 332 Ill. App. 3d 1091, 1097 (2002) (holding a remand to a different judge was warranted "in order to remove any suggestion of unfairness").

¶ 49    Although the State contends this instruction is unwarranted because the trial judge, Judge James Karahalios, is no longer on the bench, we do not know if he will return.

¶ 50    Given the disposition reversing defendant's conviction and remanding for a new trial, we need not address defendant's challenge to the post-trial motions and sentencing.

¶ 51    Reversed and remanded for new trial with instructions.