THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MORRIS FRIEDMAN, Defendant-Appellant.

Second District    No. 77-343

Opinion filed November 2, 1978.

Stephen M. Komie, Paul Bradley, and Elizabeth Clarke, all of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago, and Dennis Ryan, State's Attorney, of Waukegan (Stuart Opdycke, Donald B. Mackay, and Melbourne A. Noel, Jr., Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

A Lake County jury found the defendant-appellant, Morris Friedman, hereinafter the defendant, guilty of 10 counts of theft by deception and one count of conspiracy. The trial court imposed concurrent sentences of 3 1/3 to 10 years on five of the theft counts, to be served consecutively with concurrent 3 1/3- to 10-year sentences on the remaining five counts of theft by deception. The defendant has appealed, essentially raising seven issues. First, the defendant argues that the indictment against him was improperly obtained. Secondly, he asserts that he was not proved guilty beyond a reasonable doubt. His third contention is that he was denied his constitutional right to counsel of his choice. Fourthly, the defendant asserts that the trial court made several errors, mandating a reversal of his conviction. Fifth, the defendant contends that he was improperly convicted of conspiracy. Sixthly, he argues that the jury was supplied with improper verdict forms; and, finally, the defendant argues that his sentence was excessive.

After reviewing the record and weighing the arguments presented, we are of the opinion that this cause must be remanded to the circuit court of Lake County for a new trial on the grounds that the defendant was denied his constitutional right to counsel of his own choice.

The facts relevant to our disposition of this case begin on May 24, 1976, when the State's Attorney of Lake County, Illinois, appeared before the grand jury seeking the indictment which was the basis for this case. At that time, the State's Attorney of Lake County introduced two Assistant Attorneys General and informed the grand jury "* * * that the Attorney General is cooperating with the State's Attorney of Lake County for the purpose of seeking an indictment * * *" and that "* * * the questions will be asked by the Assistant Attorney General who will cooperate with me in this case for prosecution in Lake County, Illinois." After the Assistant Attorney General had presented the evidence to the grand jury, it returned a 32-count indictment against seven individuals, including the defendant.

The defendant was brought to trial with one other individual, Ted Moore, who is not a party to this appeal. The trial of the two men commenced on January 17, 1977. At the beginning of the proceedings, the defendant informed the court that he was dissatisfied with his court-appointed counsel and requested a continuance so that he might be represented by counsel of his own choice. At that time, the defendant presented the trial court with a letter from Attorney Raymond J. Smith of Chicago in which Mr. Smith stated that he would be engaged in a trial in Federal Court until January 25, 1977, but if the trial court would grant a continuance until after that time, Mr. Smith stated that he would represent the defendant. Although the letter was not in the proper form of a motion, the trial court stated that it would treat it as one and denied it. The defendant was compelled to go to trial represented by the public defender. Two days into trial, the public defender was joined by Attorney Gerald Werkman, who took charge of the defendant's defense for the remainder of the trial.

During the course of the trial the State presented evidence which tended to show that the defendant and Mr. Moore were part of a scheme to inveigle people to invest large sums of money (at least $6,500) to purchase distributorships from various companies controlled by the defendant which were in the candy business.

The first step in this scheme was the appearance of an ad in a local newspaper advertising the distributorships. The ad was written by the defendant and promised established accounts for a large candy manufacturing company that had proven, chain-store acceptance. The next step was for Mr. Moore to contact the prospects by phone. During this initial conversation, Mr. Moore would give the prospect the phone numbers of several references for the prospect to call to inquire about the company. These references were supposedly successful distributors. However, the State called two of these referenced persons as witnesses, and each testified that the defendant had paid them to tell the prospects

who called them essentially that they were successful distributors when, in fact, they were not.

The third stage of this scheme was a visit to the prospect's home by Mr. Moore, who gave the sales pitch that included the implication that the accounts that the prospect would be getting would be in stores such as K-Mart, Jewel, Eagle, Osco and Walgreens. In fact, no account was ever established in such a store. The prospect was told that his accounts would be established by "marketing experts." One of these so-called "marketing experts," a young man who had taken two marketing-related courses in college, was called by the State. During his testimony he described the procedure he used to establish accounts. He testified that he would pick out a store in a shopping center—usually a small drugstore or florist shop—and observe it for 30-45 minutes to observe its foot traffic. After this mere modicum of research, this so-called "marketing expert" would set up the account.

If Mr. Moore was successful in his sales pitch, he would take the prospect's check for at least $6,500 and return to Lake Zurich, Illinois, the location of the home offices of the companies. There, the defendant, or another employee acting under the defendant's instructions, would accompany Mr. Moore to the bank where the check would be deposited in the companies' account and Mr. Moore would be paid his commission. As a finishing touch, each of the new distributors was sent a mailgram composed by the defendant, congratulating him on becoming a distributor.

The distributors were supposed to recover their entire investment through discounts on the re-ordering of merchandise, and for a while the companies granted discounts on such re-orders. However, the companies went bankrupt long before anyone could even approach recovery of his total investment.

Based upon the above evidence, the jury returned a verdict of guilty on all counts, from which the defendant appeals.

■■ We turn first to the defendant's contention that the indictment was fatally defective because two Assistant Attorneys General presented the evidence to the grand jury and not someone from the staff of the Lake County State's Attorney's office. This precise issue was dealt with in the recent supreme court case of *People v. Massarella* (1978), 72 Ill. 2d 531, 382 N.E.2d 262. There, our supreme court held that the Attorney General has the authority to appear before a grand jury to initiate any action and proceed to prosecute it so long as the local State's Attorney does not object to the Attorney General's appearance. In the case at hand, the State's Attorney for Lake County did not object to the Attorney General's involvement. In fact, the record makes it clear that the Lake County State's Attorney and the Attorney General were cooperating in the prosecution of this case. Therefore, it is

clearly demonstrated that the indictment in this case was properly obtained.

■■ Next, we give our attention to the defendant's argument that he was not proved guilty beyond a reasonable doubt. It shall suffice for us to say that the evidence presented at trial and the circumstances surrounding that evidence more than justify the jury's conclusion that the defendant was an integral part of an atrocious scheme to defraud the unwary by inducing them through promises of marketing experts and high traffic locations to invest in an enterprise controlled by the defendant, which, he knew, was doomed to failure.

■■ Thirdly, we turn our attention to the defendant's contention that he was denied his constitutional right to counsel of his own choice. We agree. The sixth amendment guarantee of the right to counsel includes the right to counsel of one's own choice. (*People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116; *People v. Isenberg* (1978), 60 Ill. App. 3d 325, 376 N.E.2d 778.) However, that right does not permit an " 'indefinite thwarting of the administration of justice.' " (*People v. Green* (1969), 42 Ill. 2d 555, 557, 248 N.E.2d 116, 117.) The State has cited one case, *People v. Johnson* (1976), 40 Ill. App. 3d 388, 352 N.E.2d 462, where the refusal to grant a continuance to obtain private counsel was upheld. In that case, the defendant was represented by the public defender and had previously been granted a continuance to secure private counsel, but failed to do so. The case at hand is clearly distinguishable. First of all, the defendant had not previously been granted a continuance for the purpose of securing private counsel. Secondly, the defendant presented strong evidence that he had already secured the services of an attorney who would represent him if the trial were delayed until the attorney could finish the case he was then trying. At the very least, the trial court should have investigated the matter to determine how long it would be before the defendant's chosen counsel would be available for trial. (*People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116.) Instead, the trial court forced the defendant to proceed with the counsel in whom he stated he had lost faith, thereby violating the defendant's constitutional right to counsel of his own choosing and mandating a reversal of the defendant's conviction and a remandment for a new trial.

In light of our decision to remand this cause for a new trial, we need not reach the remaining issues raised by the defendant's brief.

For the above stated reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and GUILD, J., concur.