(No. 51526.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. MORRIS FRIEDMAN, Appellee.

*Opinion filed March 28, 1980.*

William J. Scott, Attorney General, of Springfield (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, of counsel), for the People.

Stephen M. Komie and Paul Bradley, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Morris Friedman, was convicted in a jury trial in the circuit court of Lake County of 10 counts of theft by deception (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)) and one count of conspiracy to commit theft by deception (Ill. Rev. Stat. 1975, ch. 38, par. 8—2). The trial court sentenced defendant to concurrent terms of imprisonment of 3 1/3 to 10 years for five of the theft counts, to be served consecutively with concurrent 3 1/3- to 10-year terms of imprisonment for the remaining five counts. In addition, the trial court imposed fines amounting to $100,000. The appellate court reversed defendant's conviction and remanded the cause for a new trial (65 Ill. App. 3d 613), holding that defendant had been denied the right to counsel of his choice when the circuit court denied defendant's motion for substitution of counsel. We allowed the State's petition for leave to appeal. Though we disagree with the appellate court's holding that defendant was denied the right to counsel of his choice, we do agree that defendant's conviction must be reversed for the reasons that follow.

Defendant, together with six other individuals, was indicted on May 24, 1976. This indictment arose out of defendant's activities in connection with four "marketing corporations" which he had established. The appellate court opinion describes in detail the methods employed by defendant and Ted Moore, a codefendant in the trial of this cause, to induce the participation of unsophisticated investors in these enterprises. (65 Ill. App. 3d 613, 615.) Only those facts relevant to our opinion will be discussed.

After indictment in Lake County on May 24, 1976,

and extradition from Arizona in July 1976, defendant appeared with retained counsel, William H. Wise, in the circuit court of Lake County on July 22, 1976, for purposes of arraignment and bond reduction. On this date, trial was set for October 6, 1976. Defendant's motion to travel outside the State for business purposes was granted on August 6, 1976. The trial judge assigned to the case, Judge Doran, became ill in early October, the matter was continued, and Judge Doran was eventually replaced by Judge Krause. William H. Wise withdrew as counsel for defendant on October 19, 1976, citing certain irreconcilable differences as the basis. On October 22, 1976, Judge Krause ordered all pretrial motions to be filed on or before November 19, 1976, setting argument for November 29, 1976. He further advised all parties to expect trial in early January 1977. At this time the public defender was appointed to represent defendant. Defendant was then further advised that he could substitute retained counsel for appointed counsel if he later obtained funds, subject to the condition that retained counsel be ready for trial on the scheduled date.

On November 4, 1976, defendant, at that time residing in Arizona, wrote a letter to Judge Krause expressing his dissatisfaction with the public defender. Defendant stated that he had made repeated efforts to contact the public defender by telephone, stating further that these calls remained unanswered. Judge Krause responded to this correspondence on November 15, 1976. He informed defendant that if the preparation of his defense required that he return to Illinois, he should do so. On November 29, 1976, pretrial motions were argued with George Pease, public defender of Lake County, representing defendant. Pease noted for the record that his office had received correspondence from defendant complaining of numerous unsuccessful attempts to contact his office. Pease stated that a review of the telephone log revealed no such attempts

and that he had written defendant advising him of the proper number to call. Judge Krause commented that if the preparation of the defense required defendant's return, he would consider the State's motion to restrict defendant's travel. Judge Krause then set a final pretrial date of January 7, 1977, and a final trial date for January 17, 1977.

On January 17, 1977, the morning of trial, defendant presented the court with a letter from Raymond J. Smith, a private attorney. Smith stated that on January 14, 1977, defendant had contacted him concerning representation in the present case. Smith also stated that defendant had been informed that he could assume representation only if the present trial were continued to allow him to prepare the defense, and that he would presently be on trial in another matter until January 25, 1977. Smith's letter further indicated that defendant had expressed dissatisfaction with his appointed counsel. At this time, the prosecution and the codefendant, Ted Moore, were both prepared to go to trial. Without discussing this matter with either the prosecution or codefendant, Judge Krause noted that this request for a continuance was not in the form of a motion, stating that if it were, it would be denied.

Defendant then stated that he had lost faith in his appointed counsel and objected to his representation. Defendant informed the court that he had discussed his appointed counsel's advice to plead guilty with counsel from the Federal defender's office who had been appointed to represent defendant on Federal mail fraud charges arising out of the same series of transactions. According to defendant, it was the opinion of his Federal counsel that defendant had an adequate defense to the Federal charges. On the basis of this opinion, related to defendant's indictment for mail fraud, defendant stated that he lost faith in his public defender. The trial court then questioned Pease. Pease agreed that he would make

the State prove each and every charge against defendant, and the court stated that he was defendant's appointed counsel.

Defendant continued his objection to this representation, stating that he wished to waive representation by counsel altogether. The court instructed the public defender to be present to consult with defendant if needed. The court then informed defendant that he had an absolute right to discharge his attorney, but that the trial would begin that day. Defendant stated that, under those circumstances, he wished to be represented by the public defender. On the second day of trial, Gerald Werksman, a private attorney retained by defendant's friends, joined the defense.

The appellate court, relying upon the fact that defendant had not previously been granted a continuance to secure private counsel, and the trial judge's failure to determine the length of time that defendant's chosen attorney would require to prepare the case, found that defendant had been denied the right to counsel of his own choosing.

By statute in Illinois, the decision to grant or to deny a motion for continuance lies in the sound discretion of the court (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e)). In addition to the specific circumstances enumerated in the statute, the court may grant a continuance if the "interests of justice" so demand (Ill. Rev. Stat. 1973, ch. 38, pars. 114—4(d), (f)). Our continuance provisions are to be construed "to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial." (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(h).) To accomplish this end, section 114—4(e) provides that all motions for continuance "shall be considered in light of the diligence shown on the part of the movant." (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) Our review of the trial court's

judgment in balancing these factors focuses initially on the question of whether the decision of the court amounts to an abuse of discretion. (*People v. Solomon* (1962), 24 Ill. 2d 586, 590.) The determination of whether the denial of a continuance violates a substantive right of the accused must turn on the particular facts of each case. *People v. Lott* (1977), 66 Ill. 2d 290, 297.

In the present case, defendant was informed by the court on October 22, 1976, approximately 2½ months prior to trial, that he was free to substitute retained counsel, provided this substitution would not delay the trial. On the morning of trial, defendant presented the court with his first request to substitute counsel. Defendant's counsel of choice indicated that he could not be ready by the scheduled trial date, stating that defendant had first contacted him three days prior to trial. The record is silent on other attempts by defendant, if any, to secure private counsel. We agree with the trial judge that this request was not timely.

Defendant seeks to avoid the effect of his lack of diligence by arguing that his decision to seek retained counsel on the eve of trial was motivated by his sudden loss of confidence in the public defender. Defendant contends that this loss of confidence was engendered by appointed counsel's advice to plead guilty, measured against the opinion of defendant's Federal counsel. We do not agree, however, that defendant's lack of diligence should be excused. The trial court was first confronted with defendant's dissatisfaction with appointed counsel in early November. Defendant claimed at that time that the public defender had not answered his numerous telephone calls. The public defender, however, informed the court that the telephone log in his office revealed no such attempts. The trial court was then presented with defendant's claim of a sudden loss of faith in appointed counsel on the morning of trial. In response to this assertion, the

trial court obtained the assurance of appointed counsel that he would vigorously represent defendant. Our review of the record also reveals that defendant informed the court at his sentencing hearing of his intent to enter a plea of guilty in the Federal proceeding, and we therefore doubt the sincerity of defendant's claim that his loss of faith was prompted by his Federal defender's opinion of the viability of his defense. Independent of defendant's sincerity, we do not find that his expression of dissatisfaction, given the assurance of the public defender, amounted to an irreconcilable conflict which would require continuance of the trial.

Our cases have consistently held that the accused in a criminal case does indeed have the constitutional right to be represented by counsel of his own choosing. It is equally true, however, that this right may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime. (*People v. Solomon* (1962), 24 Ill. 2d 586, 590.) We hold that defendant was not denied the right to counsel of his own choosing under the circumstances of this case. The trial court could reasonably conclude that the request was made solely for the purpose of delay. (*People v. Cross* (1979), 77 Ill. 2d 396, 413.) Notwithstanding our disagreement with the appellate court on this point, other error requires reversal of defendant's conviction.

In seeking to sustain the appellate court's reversal of his conviction, defendant has argued that he was denied the right to a fair trial by the introduction of statements made in the course of a plea-related discussion. The record reveals that Stan Kaiser, an investigator for the office of the Attorney General, was called as a witness by the State and testified, in addition to matters not relevant to this appeal, that on June 21, 1976, he received a message at his office informing him that defendant had attempted to

telephone him concerning a "very urgent" matter. Kaiser returned defendant's call and testified that in the course of this conversation defendant had inquired about "making a deal" and that defendant stated, "If I'm convicted, I would rather go to a Federal prison as opposed to a State prison." Defendant had been indicted for a Federal offense arising out of the same series of transactions. Kaiser testified that he informed defendant, "I have no control over that, talk to Mr. Rosenberg." Defendant made no objection to the introduction of this testimony.

On cross-examination, Kaiser testified that defendant was aware of the fact that he was an investigator for the Attorney General's office and that defendant was aware of the fact that he had been assigned to investigate defendant's indictment. He also stated that he had approximately three conversations with defendant concerning his indictment prior to this call. Kaiser further testified that it was a practice of his office to answer all calls with the introduction, "Attorney General's office" at the time defendant telephoned and left the message to contact him.

Defendant now argues that his appointed counsel's failure to move for a mistrial on the basis of this testimony, characterizing this statement as a plea-related discussion, denied him effective assistance of counsel. Independent of the performance of his counsel, but also characterizing this statement as a plea discussion, defendant contends that our Rule 402(f) (58 Ill. 2d R. 402(f)) dictates reversal. The State argues that before a statement falls within the bounds of our rule, it must be made "as an integral part of a *bona fide* negotiation," attended by a party who has authority to open plea discussion. The State suggests that our rule is inapplicable, characterizing the statement as an independent admission. The narrow issue is whether defendant's unsolicited statement to an investigator of the Attorney General's office is a plea-related discussion and therefore inadmissible.

Rule 402(f) provides:

> "If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (58 Ill. 2d R. 402(f).)

Implicit in the promulgation of this rule was our recognition of the significance of the negotiation process to the administration of justice (see *Santobello v. New York* (1971), 409 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495) and our appreciation of the devastating effect of the introduction of plea-related statements in the trial of the accused (see *Kercheval v. United States* (1927), 274 U.S. 220, 71 L. Ed. 1009, 47 S. Ct. 582). The purpose of our rule is to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril. (*People v. Hill* (1980), 78 Ill. 2d 465; *People v. Steptore* (1972), 51 Ill. 2d 208.) To accomplish this purpose, the boundaries of our rule must of necessity be delineated in relation to the reasonable expectations of the accused at the time the statement was made. In construing similar provisions of Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, the Federal courts have considered, first, whether the accused exhibited a subjective expectation to negotiate a plea, and, second, whether this expectation was reasonable under the totality of the objective circumstances, as relevant to the inquiry of whether a particular statement is plea related. (*United States v. Robertson* (5th Cir. 1978), 582 F.2d 1356, 1366.) Because of the substantial similarity in the purpose of the Federal rules, we find this analysis equally applicable to the determination of when a statement is plea related under our rule. The characterization of a statement

as plea related, and therefore inadmissible under Rule 402(f), must necessarily turn on the facts of each case.

In the present case, defendant's unsolicited statement was an offer to enter negotiation, stating generally the terms upon which defendant would be willing to bargain. We cannot agree with the State that an essential element of a plea discussion is the requirement that the statement sought to be excluded be made "as an integral part of a *bona fide* negotiation" with the appropriate parties in attendance. The fact that the party to whom this statement was made did not have the actual authority to enter negotiation is not, standing by itself, sufficient to render the statement admissible. (*People v. Hill* (1980), 78 Ill. 2d 465, 473.) Defendant could have reasonably assumed that Kaiser was an appropriate party to whom he could convey his offer to bargain. See *United States v. Herman* (5th Cir. 1977), 544 F.2d 791, 798.

Nor can we agree that the parties must be seated at the negotiating table before our rule applies. A statement made as an offer to enter negotiation is indistinguishable from a statement made at an advanced stage of the negotiation process in terms of its impact upon a jury. Statements related to either stage of this process are equally devastating in the trial of the accused. In determining whether a statement is plea related, we do not require "a preamble explicitly demarcating the beginning of plea discussions" (*United States v. Herman* (5th Cir. 1977), 544 F.2d 791, 797). But where a preamble is delivered, such as defendant's inquiry related to "making a deal" in the present case, it cannot be ignored. (See *United States v. Brooks* (6th Cir. 1976), 536 F.2d 1137.) This is a clear indication of defendant's intent to pursue plea negotiations. We find that defendant's unsolicited statement was a plea-related discussion and therefore inadmissible under Rule 402(f).

While we do not question defendant's subjective expec-

tation to enter a plea-related discussion at the time the statement was made, nor the reasonableness of defendant's expectations under the circumstances, we do agree with the State that there is a distinction between a statement made in the furtherance of a plea discussion and an otherwise independent admission which is not excluded by our rule. (See generally *United States v. Shotwell Manufacturing Co.* (7th Cir. 1961), 287 F.2d 667.) Where a defendant's subjective expectations are not explicit, the objective circumstances surrounding defendant's statement take precedence in evaluating defendant's subsequent claim that the statement was plea related. Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.,* a willingness by defendant to enter a plea of guilty in return for concessions by the State. Compare *United States. v. Pantohan* (9th Cir. 1979), 602 F.2d 855, *United States v. Levy* (2d Cir. 1978), 578 F.2d 896, and *United States v. Robertson* (5th Cir. 1978), 582 F.2d 1356, with *United States v. Brooks* (6th Cir. 1976), 536 F.2d 1137, and *United States v. Smith* (10th Cir. 1975), 525 F.2d 1017.

The State does not argue, nor would we agree, that the admission of this testimony was harmless or that the error was waived by defendant's failure to object. This court, despite overwhelming evidence of the defendant's guilt and despite his failure to object, has recognized the devastating effect of such testimony and held that the error was so prejudicial as to require reversal in *People v. Hill* (1980), 78 Ill. 2d 465, 474, and *People v. Steptore* (1972), 51 Ill. 2d 208. (Accord, *United States v. Brooks* (6th Cir. 1976), 536 F.2d 1137; *United States v. Smith* (10th Cir. 1975), 525 F.2d 1017; *United States v. Ross* (5th Cir. 1974), 493 F.2d 771.) We hold that defendant was denied the right to a fair trial by the introduction of a plea-related discussion in violation of Rule 402(f). We express no opinion on whether the failure of defend-

ant's appointed counsel to move for a mistrial after the introduction of this evidence was a denial of the effective assistance of counsel.

Because this cause will be remanded for a new trial, we will consider defendant's argument concerning the admission of evidence related to defendant's conviction of the offense of mail fraud. The State called a witness by the name of Sister Reed, a resident of the State of Texas, to testify concerning her business relationship with defendant. In addition to other matters, she testified to a telephone conversation that she had with defendant in April of 1975. She stated:

> "*** I told Mr. Friedman that his distributor had just informed me that he had been recently convicted of *** mail fraud, of mail and wire fraud.
>
> * * *
>
> I said, I want to know if that is true; *** and he said, yes, that that was true, that he had just been convicted of, a few weeks prior, *** mail and wire fraud ***.
>
> * * *
>
> And I asked him *** just what were you convicted of that for, and he said that he was convicted of that for fronting the Freshness Corporation, for the organization, and he said, for the Mafia. And *** he told me that, he had been placed as the front for this organization, and that the Mafia had shown him how to make a lot of money, and that by the time he was 21 he had had a million dollars in cash, and that he was well on his way to making his second million."

Defendant argues that the admission of that portion of this statement which refers to his conviction for the offense of mail fraud (18 U.S.C. sec. 1341 (1976)) was prejudicial error, contending that this evidence was irrelevant. The State argues that defendant's statements, taken in their entirety, are probative of defendant's intent at the time of the commission of this offense. In the alternative, the State contends that this evidence establishes defendant's *modus operandi* of setting up "front" businesses to make "quick money."

Our cases have held that evidence of extra-indictment offenses is generally inadmissible in the trial of the accused. The exception to this rule applies where the evidence of other crimes is independently relevant to show motive, intent, identity, or some other issue connected with the crime charged. (*People v. Stadtman* (1974), 59 Ill. 2d 229.) Our cases have also recognized that complex and involved financial crimes are of a type that lend themselves to proof by evidence of substantially similar crimes committed by the defendant. Evidence of substantially similar transactions is admissible to show specific intent or guilty knowledge. (*People v. Smith* (1960), 18 Ill. 2d 547, 552; *People v. Epping* (1959), 17 Ill. 2d 557, 564.) This presumes, however, that the underlying facts of the extra-indictment offense are established with sufficient clarity to demonstrate that they are in fact substantially similar.

In the present case, there is no evidence of the underlying facts of defendant's prior conviction. Defendant's practice of "fronting" corporations, standing alone, cannot serve to demonstrate that this prior crime was substantially similar to the offense at issue. Given the limited development of the underlying facts of this conviction, the probative value of this evidence is outweighed by the danger of undue prejudice. We therefore hold that the evidence related to defendant's prior conviction, absent proof of its substantial similarity, is inadmissible.

We therefore affirm the judgment of the appellate court and remand the cause for a new trial.

*Affirmed and remanded.*