NOTICE
Decision filed 05/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230623

NO. 5-23-0623

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 20-CF-177 |
| | ) | |
| JAREN J. HARVEY, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court, with opinion.
Presiding Justice Cates and Justice Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Jaren J. Harvey, was charged by superseding information with first degree murder (720 ILCS 5/9-1(a)(1) (West 2018)) in St. Clair County, Illinois, on April 23, 2020. The St. Clair County State's Attorney's Office later proposed a proffer to the defendant by sending a proffer letter to private defense counsel, attorney Kenneth Leeds. The defendant signed the proffer letter and provided a statement at a meeting that occurred on December 13, 2020. Leeds subsequently withdrew from the case, and the defendant's public defender filed a motion to suppress the statement given at the meeting. In its order on the motion to suppress, the trial court held that the meeting wherein the statement was given was a plea discussion, that the protections of Illinois Supreme Court Rule 402(f) (eff. July 1, 2012) excluding statements made during plea

1

discussions applied, and that the defendant's statement could not be used in the State's case-in-chief or to rebut a defense inconsistent with the defendant's proffer statement. The trial court did hold, however, that the defendant's voluntary proffer statement would be admissible for impeachment purposes if the defendant testified at trial contrary to the statement. The State filed an interlocutory appeal and a certificate of substantial impairment, asking this court to find that the meeting wherein the statement was given was not a plea discussion and further asking this court to hold that the statement could be used to rebut any position taken by the defense inconsistent with the statement. For the reasons set forth below, we affirm the order of the trial court.

¶ 2                                    I. BACKGROUND

¶ 3      The defendant was indicted on February 28, 2020, for the offense of first degree murder. On April 23, 2020, a superseding information was filed. The superseding information alleged that on or about January 28, 2020, in St. Clair County, Illinois, the defendant committed first degree murder in that he, or one for whose conduct he was legally responsible, without lawful justification and with the intent to kill or do great bodily harm to Dexter Byrd, shot Byrd in his body with a firearm, thereby causing the death of Byrd, in violation of section 9-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(1) (West 2018)).

¶ 4      On or around February 3, 2020, prior to indictment and pursuant to a criminal complaint, the defendant was arrested and held on $1 million bond. A pretrial investigation report was later prepared and indicated that the defendant was 19 years old and a high school senior at the time of his arrest.

¶ 5     Leeds entered his appearance on behalf of the defendant on March 4, 2020. The State then provided a letter to Leeds that included a proposed proffer agreement (proffer letter) dated April 30, 2020. The letter stated in its entirety as follows:

> "I am writing this letter to discuss the possibility of conducting a proffer with your client. In determining a fair disposition for your client's charges, we would consider such a proffer concerning criminal matters about which your client may have knowledge. This proffer could be of considerable benefit to your client depending on the information that he may be able to provide.

> To assure that there are no misunderstandings concerning the consequences of the proffer, I am writing to clarify the terms for any proffer with your client. The terms are as follows:

> First, except as provided in the fourth paragraph below, no statements or information provided by your client during the proffer will be used against your client by the St. Clair County State's Attorney's Office in these criminal proceedings or any other proceedings. [initials]

> Second, the People may make derivative use of any information revealed during the proffer. The People may pursue any investigative leads suggested by any statements made by or other information received from your client. Thus, should your client proceed to trial, the People will *not* have to prove that the evidence

3

it would introduce at trial is not derived from any statements made by or other information received from your client during the proffer. [initials]

Third, if your client is a witness at any future trials and offers testimony materially different from any statements made or other information provided during the proffer, the attorney for this office or any other prosecuting authority may cross-examine your client concerning any statements made or other information provided during the proffer. This provision is necessary to ensure that your client does not abuse the opportunity for a proffer, does not make materially false statements to a government agency and does not commit perjury when testifying at any future trials or other proceedings. [initials]

Fourth, if at any future trial or other proceeding in which your client is a defendant or a witness, your client were to testify contrary to the substance of his proffer statement, or through any manner whatsoever, either personally or through an attorney or other representative, including, but not limited to, opening statements, cross-examination of witnesses, direct examination of witnesses, or the presentation of exhibits or other evidence, present a position inconsistent with the information provided in his proffer statement, the People may use either as evidence in chief, or rebuttal evidence, any statements made or other information provided by your client.

4

This provision is necessary to ensure that no court or jury is misled by receiving information or implications materially different from that provided by your client. In addition, we want to emphasize that the above-mentioned examples are not totally inclusive of the uses the People may make of your client's proffer. [initials]

Fifth, while a proffer is many times a preliminary step to the People entering into a plea and cooperation agreement, you should know that before any offer is tendered to the defendant, the People will assess whether your client was completely truthful during the proffer. The determination of whether your client has been completely truthful is within the sole discretion of the People, and if the People determine that your client has not been completely truthful, we will not offer a plea and cooperation agreement. Your client should also understand that the People are not obligated to extend a plea offer or consider any plea proposal you make, even if the People determine that your client has been completely truthful. [initials]

Sixth, if your client wishes to accept the People's offer upon receipt and review of it, the parties will enter into a written cooperation agreement that will lay out the obligations of each party. If your client enters into that cooperation agreement, he may be required to provide additional video-recorded statements to confirm and memorialize the information tendered in the proffer and verify

the voluntariness of his cooperation. He may also be required to pass a polygraph and/or voice stress analysis test to confirm the truthfulness of his statements either before or after the signing of any cooperation agreement. [initials]

Seventh, you and your client should understand that the Court is not a party to this agreement. Your client should also understand that should a plea agreement result from a proffer the Court is not bound by the terms of any such plea agreement. [initials]

Eighth, if your client provides any information during the proffer that is exculpatory for any individual charged with an offense by the St. Clair County State's Attorney's Office, and that information has not previously been tendered to that individual's defense counsel, that information will be tendered pursuant to the People's ethical obligations under *Brady v. Maryland*. [initials]

If your client wishes to engage in a proffer under these terms, then both you and your client should initial each paragraph in the spaces provided and sign the acknowledgment and agreement attached to this letter."

¶ 6    The fourth page of the letter then stated as follows:

"ACKNOWLEDGMENT AND AGREEMENT OF JAREN HARVEY

I, JAREN HARVEY, hereby acknowledge that I have read the terms and conditions of this 'Proffer Letter' and that my attorney

has explained those terms and conditions to me. I have discussed the terms and conditions of the letter with my attorney and I understand my rights and obligations pursuant to this agreement. I understand that I have the right to remain silent and not to discuss any matters which may incriminate me. I nevertheless want to pursue negotiations with the St. Clair County State's Attorney's Office, and I hereby voluntarily and intentionally waive such rights and willingly agree to the terms and conditions set forth in the 'Proffer Letter.' I further agree to make truthful statements and answer questions according to the terms and conditions set forth in this 'Proffer Letter.' "

¶ 7    The defendant signed the proffer letter and affixed his initials next to the various paragraphs in the letter. Leeds also initialed the various paragraphs within the proffer letter. A meeting occurred on December 13, 2020, during which the defendant gave a highly incriminating statement (proffer statement) detailing his involvement in the shooting. The meeting was attended by the defendant, Leeds, the prosecutor on the case, and a detective who later drafted a summary of the defendant's proffer statement. The defendant's proffer statement was not audio or video recorded.

¶ 8    The defendant subsequently terminated his relationship with Leeds, and Leeds moved to withdraw from the case. On September 21, 2021, that motion was granted and the public defender was appointed to represent the defendant.

¶ 9    On March 17, 2023, the public defender filed a motion to suppress the proffer statement given by the defendant at the December 13, 2020, meeting. The motion argued that because the

proffer occurred "during the course of plea negotiations," Rule 402(f) should apply, and the proffer statement should be excluded in its entirety. The motion characterized the fourth paragraph as precluding the defendant's attorneys from arguing "anything inconsistent with the undocumented statement." As such, the motion alleged that this paragraph of the proffer letter was a complete waiver of the defendant's constitutional rights "to plead not guilty, remain silent, to have a trial, and have effective assistance of counsel at trial." The motion further alleged that the proffer letter was unconscionable and was not a valid agreement because it lacked consideration and a meeting of the minds, and that Leeds had improperly informed the defendant of the meaning of the letter, the implications of the defendant's proffer statement, and the likely outcome of the defendant's cooperation.

¶ 10    At the June 14, 2023, hearing on the motion to suppress the proffer statement, the State proceeded first and called Leeds as a witness. Leeds identified the proffer letter, and it was marked as an exhibit and admitted into evidence. The exhibit included the initials of both the defendant and Leeds after each of the numbered paragraphs. The acknowledgment page, dated December 13, 2020, bore the signatures of the defendant, Leeds, and the prosecutor.

¶ 11    Leeds then gave testimony regarding both the purpose of the proffer letter and his interactions with the defendant about the terms of the proffer letter. Regarding the purpose of the proffer letter, Leeds testified that the conversations with the State occurred because the defense was trying to "negotiate a plea that was something other than a life sentence or spending a considerable amount of this young life in prison." Leeds testified that this was the basis of the negotiations and the basis of the defendant's cooperation with the State.

¶ 12    Leeds explained that, while there was a lack of physical or eye-witness evidence implicating the defendant, he had made statements during an interrogation with law enforcement

shortly after his arrest that Leeds believed would likely lead to a conviction. He did not believe that a legal basis existed to suppress those statements, and he told the defendant that it was likely that he would be convicted at trial. Leeds believed that cooperation with the State would help the defendant regarding a plea recommendation because the proffered information could help the State convict other individuals implicated in the shooting. Prior to the proffer, Leeds had discussions with the State regarding alternative charges that could be filed, but he could not recall whether he told the defendant that the purpose of the proffer was to get the State to file an alternate charge or to get a better offer.

¶ 13    Leeds testified that he had counseled the defendant that he was facing 20 to 60 years of incarceration, with potential enhancements up to life in prison. Leeds agreed that the firearm enhancement in Illinois was mandatory, and the minimum sentence was actually 45 years. Leeds acknowledged, however, that he may not have explained that to the defendant. Leeds told the defendant that if he did not accept the terms of the proffer, there would be no favorable plea recommendation from the State. The defendant was aware that there was not a concrete plea offer prior to the proffer, and Leeds believed that the defendant was not under duress at the time he executed the proffer. After the proffer, at the time that Leeds's services were terminated, he had negotiated with the State for a recommendation of 25 years' incarceration, and he was trying to get that number down to 20 years.

¶ 14    Regarding the terms of the proffer letter, Leeds had provided a copy to the defendant and had visited him in jail multiple times before the proffer letter was signed. Leeds did not have any indication that the defendant could not read or write in English, although Leeds believed that the defendant had attended a "post high school learning program." They had no problems communicating during their visits. Leeds explained that he reviewed the proffer letter with the

9

defendant during an informal conversation in the courtroom. He told the defendant that no statements or information provided pursuant to the proffer letter could be used against him. Leeds read each paragraph to the defendant verbatim, and the defendant had the opportunity to read the proffer letter and ask questions. The initials at the end of each paragraph of the proffer letter indicated that Leeds had reviewed that paragraph with the defendant.

¶ 15    During cross-examination, Leeds testified that the purpose of the proffer letter was to lock in the defendant's testimony, and if he were to testify inconsistently at trial, that would be contrary to the purpose of the proffer. Leeds still believed at the time of the hearing that no statements or information provided in the proffer could be used against the defendant unless he later testified in court inconsistent with the proffer statement. Leeds believed that the defendant understood the totality of the circumstances he was facing and understood what the impact would be if he were to testify in court contrary to the proffer statement.

¶ 16    On further cross-examination by defense counsel, the public defender, Leeds agreed that the first paragraph of the proffer letter stated that "no statements or information [would] be used against" the defendant. Defense counsel then questioned Leeds about paragraph four, which dealt with the scenario where the defense may present evidence or argument inconsistent with the defendant's proffer statement at a criminal proceeding. Leeds did not agree that paragraph four of the proffer letter was as broad as defense counsel suggested. He did not believe that if an inconsistent position was presented to the jury, it would "open the door to [allow the State to use the defendant's] statements in the proffer" at trial. He later acknowledged, however, that paragraph four could be construed that way. He had not advised the defendant of this interpretation of paragraph four. Leeds only told the defendant that "if he accept[ed] the proffer and [they went] to

10

trial and [the defendant] testifie[d] inconsistent with the proffer that any statements he made in conjunction with the proffer could be used against him."

¶ 17    Finally, Leeds indicated that the proffer statement was not recorded. On redirect, Leeds indicated there was no reason to record the statement as no one requested that the proffer statement be recorded.

¶ 18    After Leeds testified, there was no further testimony offered by either party. The State then argued that the proffer statement was not made pursuant to a plea discussion, but rather was a pre-negotiation conversation and part of the investigation stage of the case. The State would not negotiate with a defendant without some idea of what the defendant would say, as it needed to be able to place value on the proffered evidence. There was no obligation for the State to tender an offer, and there was no obligation for the defendant to accept an offer; therefore, the State argued that the proffer was not a negotiation.

¶ 19    The trial court asked why the proffer statement had not been recorded, and the State responded that it was the custom of the office to provide an opportunity for a defendant to do an "off-the-record proffer" in the hopes that it would be a less intimidating procedure. The trial court asked the State whether the defendant's initial statement to law enforcement had been recorded, and the State confirmed that the initial statement was recorded.

¶ 20    The State then argued that if the defendant presented any defense inconsistent with the proffer statement he had given, either through the defendant himself, or through counsel, at any point during trial, the proffer statement could be used to rebut the inconsistent defense. Relying on an analogy with Rule 410 of the Federal Rules of Evidence (Fed. R. Evid. 410), and *United States v. Mezzanatto*, 513 U.S. 196 (1995), the State alternatively argued that if the proffer statement was considered a plea discussion pursuant to Rule 402(f), then the protections of Rule 402(f) could be

11

knowingly and voluntarily waived. The State noted that a waiver is "voluntary" in the absence of coercion and is "knowing if made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." The State concluded that the proffer letter, by way of having the defendant initial each paragraph, acted as a knowing and voluntary waiver of the protections of Rule 402(f).

¶ 21    The defense argued that the meeting where the proffer statement was given was a plea discussion and Rule 402(f) should apply to prohibit the use of the proffer statement. Defense counsel emphasized that the State repeatedly reinforced to the defendant that the proffer statement would not be used against him and attempted to put the defendant at ease by stating that the proffer statement would be off the record, thereby treating the conversation like it was part of a plea negotiation.

¶ 22    Regarding waiver of the protections of the rule, the defense claimed that the proffer letter was clearly confusing, as Leeds did not interpret the proffer letter to allow for the proffer statement to be used unless the defendant testified contrary to the statement. The defense further argued that if the State wanted to be clear that it could use a proffer statement that was given off the record and not recorded, then it could refresh the defendant's *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) prior to the proffer. This would ensure that the defendant knew that the proffer statement could be used against him. The defense claimed that the defendant could not knowingly and voluntarily waive his right to remain silent when he did not understand the terms of the proffer letter.

¶ 23    Defense counsel also argued that Leeds had misled the defendant about the minimum sentence in the case, concluding that if the defendant did not know what his minimum sentence would be, there could be no meeting of the minds. Defense counsel further noted that if the State

had promised nothing to the defendant, then there was no valid agreement. Finally, defense counsel claimed that because she was not present at the proffer and it was not recorded, she did not have knowledge of what would trigger the State's ability to use the proffer statement at trial.

¶ 24    The State responded that the defense could test the evidence and cross-examine witnesses to ensure that the State would be held to its burden and, therefore, the defendant was not precluded from presenting any defense. It further argued that the proffer letter was a valid contract with consideration from both parties, but that the consideration did not include an obligation for the State to make an offer. The State argued further that the agreement not to use the defendant's statements, as set forth in paragraph one, was consideration for the contract. The trial court responded, "with exceptions big enough to drive a tractor trailer through." In further comment, the trial court noted that the conversation would not have occurred but for the incentive to receive a favorable offer.

¶ 25    The trial court also asked the State whether allowing the proffer statement to be used to impeach the defendant would be a sufficient way to prevent him from misleading a jury. The State responded that even if the defendant chose not to testify, he could still contradict his proffer statement. For example, he could present alibi witness testimony that he was not present at the shooting. If the State were not permitted to rebut that testimony with the proffer statement, the defendant would thereby undermine the truth-seeking function of a trial, and the State would have no recourse.

¶ 26    The trial court took the matter under advisement and later entered a written order on July 24, 2023. The trial court noted that the proffer was initiated by the State, that the proffer meeting was not audio/video recorded or transcribed, and that the only written record of the meeting was a report from the case agent. The trial court then found that "it was reasonable for the defendant to

13

believe that his meeting with the case agent and the assigned prosecutor would lead to a plea bargain." Noting that the defendant had been charged at the time of the proffer, the trial court held that the discussion "was clearly part of a plea-bargaining process" and that Rule 402(f) applied.

¶ 27 In clarifying how Rule 402(f) would apply, the trial court held that the defendant's proffer statement was inadmissible in the State's case-in-chief, and that the defendant could present a defense inconsistent with his statement without triggering use of the proffer statement by the State. The court further found that the defendant's proffer statement was voluntary and therefore would be admissible for impeachment if the defendant testified at trial inconsistent with his proffer statement. Thereafter, the State filed its notice of appeal and a certificate of substantial impairment.

¶ 28                                    II. ANALYSIS

¶ 29 On appeal, the State argues that the trial court incorrectly determined that the meeting where the proffer statement was given was a plea discussion and asserts that the protections of Rule 402(f) should not apply. The State further argues that, even if the meeting was a plea discussion, the defendant effectively waived the protections afforded by Rule 402(f) when he signed the proffer letter. The State ultimately asks this court to reverse the trial court's order excluding the defendant's proffer statement for any purpose other than impeaching the defendant.

¶ 30 "When reviewing a trial court's ruling on a motion to suppress, we greatly defer to the court's factual findings and will not reverse those findings unless they are against the manifest weight of the evidence." *People v. Neese*, 2015 IL App (2d) 140368, ¶ 10. The ultimate decision to grant or deny the motion is reviewed *de novo*. *Id.*

¶ 31                          A. Plea-Related Discussion

¶ 32 We first determine whether the defendant's proffer statement was part of a "plea discussion" within the meaning of Rule 402(f). Ill. S. Ct. R. 402(f) (eff. July 1, 2012). A trial

14

court's factual determinations are accorded deference and can be reversed only where such findings are manifestly erroneous, but the court's legal conclusion about whether a statement is admissible under Rule 402(f) is subject to *de novo* review. *People v. Eubanks*, 2021 IL 126271, ¶ 47.

¶ 33    Illinois Supreme Court Rule 402(f) (eff. July 1, 2012) provides:

> "If a plea discussion does not result in a plea of guilty, *** neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding."

¶ 34    In *People v. Friedman*, 79 Ill. 2d 341, 351 (1980), our supreme court recognized the significance of the negotiation process to the administration of justice and the devastating effect of the introduction of plea-related statements in the trial of the accused. The court explained that for these reasons, Rule 402(f) must be understood in the context of the reasonable expectations of the defendant at the time of the statement. *Id.* The court looked to the federal rules and court decisions for guidance, as the federal rule is substantively identical to our Rule 402(f). *Id.*; see Fed. R. Evid. 410. The *Friedman* court then adopted a two-part test employed by some federal courts when deciding if a discussion was plea-related. *Friedman*, 79 Ill. 2d at 351. Under this two-part test, the first question is whether the accused exhibited a subjective expectation to negotiate a plea, and the second is whether the expectation was reasonable under the totality of the objective circumstances. *Id.*

¶ 35    To clarify application of the test, the *Friedman* court explained that where a defendant provides a clear indication of their intent to pursue plea negotiations, a statement will be considered plea-related. *Id.* at 352. However, "[w]here a defendant's subjective expectations are not explicit,

15

the objective circumstances surrounding defendant's statement take precedence in evaluating defendant's subsequent claim that the statement was plea related." *Id.* at 353. "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.*, a willingness by defendant to enter a plea of guilty in return for concessions by the State." *Id.* Whether a statement by a defendant is plea related turns on the facts of each case. *Id.* at 352. Illinois courts may consider a variety of factors to determine whether a statement is plea related, including the nature of the statement, to whom the defendant made the statement, and what was said by the parties to the conversation. *People v. Jones*, 219 Ill. 2d 1, 27-28 (2006).

¶ 36    In this case, the State argues that because the defendant did not testify at the suppression hearing, there is no reliable indication in the record of what the defendant's subjective expectations were regarding the proffer. Regarding the objective circumstances surrounding the proffer statement, the State claims that because the defendant did not offer to plead guilty or request any concessions from the State prior to making the proffer statement, the meeting was not a plea discussion. In support, the State notes that the proffer letter specifically informed the defendant that the meeting would be merely a preliminary step to the State entering into a plea and cooperation agreement, and the State could unilaterally refuse to offer or engage in a plea discussion.

¶ 37    The defendant argues that plea discussions are essential for the functioning of the criminal justice system and that interest would be undermined if a defendant's statements given during plea negotiations could be used against him. He claims that defendants, generally, would be far less likely to participate in negotiations if they faced the prospect of creating evidence of their own guilt in the negotiation process. The defendant further argues that Illinois law requires exclusion of statements that are made as offers to enter into negotiations and that a negotiation that does not

16

lead to an offer does not cease to be a negotiation. Because his signature on the acknowledgment paragraph indicates that he had a subjective expectation to pursue negotiations with the State and because he provided a truthful statement during the proffer in furtherance of his expectation, the defendant concludes that he exhibited a subjective expectation to negotiate a plea deal. He further claims that his belief was objectively reasonable and that Illinois law supports that the trial court properly determined that he held such a reasonable belief.

¶ 38 Although the defendant did not testify at the suppression hearing, there is some indication in the record of his subjective expectation to negotiate a plea. First, his signature appears on page four of the proffer letter, titled "Acknowledgment and Agreement of [the defendant]." The sole paragraph on that page includes the language, "I nevertheless want to pursue negotiations with the St. Clair County State's Attorney's Office ***." Further, the nature of the defendant's proffer statement in this case was highly incriminating. Therefore, the trial court could have reasonably inferred that the defendant gave the incriminating proffer statement with the intent to plead guilty upon completion of successful plea negotiations. The defendant's signature on the acknowledgment page, and the nature of his proffer statement, support the inference that the defendant intended to plead guilty if a favorable agreement could be reached. Accordingly, considering the totality of the circumstances, we find that the defendant demonstrated a subjective expectation to negotiate a plea.

¶ 39 Having determined that the defendant demonstrated a subjective expectation to negotiate a plea, we next determine whether this expectation was objectively reasonable, considering the totality of the circumstances. We note that it was the State, not the defendant, who first initiated the proffer discussion by way of a proffer letter offered to Leeds. At the time that the letter was provided, the defendant had been charged and was in custody. The proffer letter provided to Leeds

17

included language stating, "In determining a fair disposition for your client's charges, we would consider such a proffer concerning criminal matters about which your client may have knowledge. This proffer could be of considerable benefit to your client depending on the information that he may be able to provide." The proffer letter also stated that the proffer was "many times a preliminary step to entering a plea and cooperation agreement."

¶ 40 At the suppression hearing, Leeds testified that prior to the proffer, he had discussions with the State regarding various alternative charges that the State could file against the defendant. Leeds believed that the proffer could help the State convict the other individuals implicated in the shooting and help the defendant regarding any plea recommendation from the State. Leeds believed that the defendant understood that if he did not accept the terms of the proffer, there would be no favorable plea recommendation from the State.

¶ 41 The defendant signed the proffer letter, and he and Leeds met with the prosecutor and an investigator assigned to the case. The defendant provided a statement at that meeting, which consisted of a detailed explanation of the defendant's involvement in the shooting. Leeds's testimony at the suppression hearing established that the defendant cooperated with the State and provided the proffer statement because the defense was attempting to negotiate a plea. The defendant was urged by his attorney to be entirely truthful in the proffer session, and there is no indication in the record that the defendant was not truthful in giving his proffer statement. Under these facts, we find that it was not objectively unreasonable for the defendant to believe that he was engaged in a plea-related discussion.

¶ 42 Although we have made the finding that it was not objectively unreasonable for the defendant to believe he was engaged in plea negotiations, we briefly address the State's reliance on *United States v. Edelmann*, 458 F.3d 791 (8th Cir. 2006), which the State argues is persuasive

18

authority that should guide our determination. The *Edelmann* court held that four factors must be present for a discussion to be plea related: (1) a specific plea offer, (2) a deadline to plead, (3) an offer to drop specific charges, and (4) a discussion of possible sentences. See *id.* at 804. If we were to adopt the *Edelmann* factors, such requirements would be contrary to the holding in *Friedman.* Indeed, the *Friedman* court explicitly rejected the State's argument that to be considered a plea discussion requires that a statement be made as an integral part of a *bona fide* negotiation. *Friedman*, 79 Ill. 2d at 352. Under *Friedman*, an offer to enter into a negotiation by a defendant can be plea related, and the "rudiments of [a plea] negotiation" are present where there is "a willingness by defendant to enter a plea of guilty in return for concessions by the State." *Id.* at 352-53. In this case, the defendant's conduct indicated a subjective expectation to negotiate a plea and a willingness to plead guilty. Leeds testified that the proffer occurred after he had initiated conversations with the State to negotiate a favorable plea offer for his client. We find that under the circumstances herein, these facts satisfy the requirements set forth in *Friedman* and support our finding that the defendant's expectation to negotiate a plea was reasonable.

¶ 43    Because we have found that the defendant's expectation to negotiate a plea was both subjectively and objectively reasonable, we agree with the trial court's determination that the meeting wherein the proffer statement was given was a plea discussion, thereby invoking the protections of Rule 402(f). Our holding is consistent with cases in Illinois finding that a discussion was plea related. See, *e.g.*, *id.* at 350, 352-53 (statements made by a defendant to an investigator at the office of the Attorney General, where the defendant placed a phone call to that office and inquired about " 'making a deal' " and stated that he would rather go to federal prison than state prison, were plea related); *People v. Hill*, 78 Ill. 2d 465, 471-74 (1980) (discussion was plea related where assistant prosecutor said he could discuss making a deal but the state's attorney would have

to approve any such deal); *People v. Connolly*, 186 Ill. App. 3d 429, 436 (1989) (statement was plea related where defendant asked officer if deals were made in that county); *People v. Hoerer*, 375 Ill. App. 3d 148, 153-54 (2007) (defendant's testimony at trial of codefendant was inadmissible against defendant where, in engaging in discussion forming the basis of the testimony, defendant had a reasonable subjective belief to enter plea negotiations in that he and his lawyer met with prosecutors to discuss a plea arrangement, even though no offer was ever provided to the defendant, no agreement was reached, and no concessions had been made by the State at the time of the testimony).

¶ 44    Under the facts of this case, the defendant demonstrated a subjective expectation to negotiate a plea and that expectation was not objectively unreasonable. Accordingly, we find that the defendant's proffer statement was plea related and that the statutory protections of Rule 402(f) apply.

¶ 45                                    B. Waiver

¶ 46    Having determined that the discussion at issue was plea related, thereby invoking the protections of Rule 402(f), we next determine whether the defendant waived those protections when he signed the proffer letter. The State argues that the language of the proffer letter is an enforceable contract that clearly encompasses the substance of Rule 402(f), and the defendant's voluntary participation in the proffer served as a waiver of the Rule 402(f) protections. In support of its argument, the State claims that the defendant's initials next to each paragraph indicate his acknowledgment of, agreement to, and understanding of the proffer letter. Thus, the State argues that the proffer letter was valid and enforceable in its entirety because the proffer letter "clearly explained the terms and conditions under which defendant's statement would be admissible." The State further contends that the proffer letter was explicit in its terms and contained a number of

20

conditions, or "triggers" which, if effectuated, would allow for the use of the defendant's statement. For example, if the defendant testified inconsistently with the proffer statement, this would trigger the provision where the defendant could be cross-examined about his statement. The State urges this court to reverse the trial court's partial granting of the defendant's motion to suppress and allow the State to use the proffer statement at any point in trial where the waiver is triggered.

¶ 47     The defendant responds by pointing out that the trial court excluded the defendant's statement pursuant to Rule 402(f), and that the proffer letter does not contain any language stating that the defendant was waiving a challenge under Rule 402(f). Additionally, the defendant claims that he could not have "knowingly and understandingly" entered into a contract with the State where his counsel, Leeds, failed to fully advise the defendant of the terms of the proffer letter. The testimony of Leeds revealed that he did not inform the defendant of a key provision in paragraph 4, that the State could use the defendant's proffer statement at trial if his attorney contradicted any part of the proffer statement in any manner, including, but not limited to, opening statement, closing argument, presentation of exhibits, or other theory of defense. Consequently, the defendant was never advised that not only would his trial testimony, if inconsistent, trigger the admission of the proffer statement, but a multitude of his attorney's actions could also trigger the statement's admission at trial. The defense further notes that the defendant was inadequately advised as to the minimum sentence he was facing. Finally, the defendant urges this court to examine the State's cases, as all of the authority concludes that there can only be a valid waiver of the protections offered by federal Rule 410 if the agreement is entered into knowingly and voluntarily. Because Leeds failed to fully advise the defendant of the terms of the proffer letter, the defendant argues

that he could not have entered into the proffer agreement knowingly or voluntarily. See *People v. Alfonso*, 2016 IL App (2d) 130568, ¶ 38.

¶ 48    With regard to the issue of waiver, we first consider *Mezzanatto*, 513 U.S. at 197, where the United States Supreme Court examined whether the defendant could waive his statutory right to exclude from trial his statements made during plea discussions. The issue before the *Mezzanatto* Court was whether Federal Rule of Evidence 410, and its procedural analog, Federal Rule of Criminal Procedure 11(e)(6), Pub. L. 94-64, § 3, 89 Stat. 370 (1975) (repealed 2002), prevented the use of a plea-related statement at trial. *Mezzanatto*, 513 U.S. at 197. The defendant in that case had agreed that his plea-related statements could be used to impeach him if he testified contrary to the statements. *Id.* at 198. Although the language in the rule has been subsequently amended for ease of understanding, Federal Rule of Evidence 410(a) remains substantially unchanged from the *Mezzanatto* decision and provides:

> "In a civil or criminal case, evidence of the following is not admissible against the defendant who *** participated in the plea discussions:
>
> * * *
>
> > (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea."

¶ 49    The *Mezzanatto* Court explained that there is a presumption that statutory and constitutional protections are generally waivable in the absence of some contrary indication of Congress's intent to preclude waiver. *Mezzanatto*, 513 U.S. at 201. The court noted that the

22

respondent had not complained that he had entered into the agreement at issue unknowingly or involuntarily and held that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* at 210.

¶ 50　We have already determined that Illinois Rule 402(f) is substantively identical to Federal Rule of Evidence Rule 410(a). Therefore, we turn our consideration to the issue of whether some or all of the protections of Rule 402(f) can be similarly waived. Waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." *People v. Lesley*, 2018 IL 122100, ¶ 36. A statutory right may be waived "so long as the defendant's waiver is voluntary, knowing, and intelligent." *Id.* ¶ 50. That requirement "calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* ¶¶ 50-51.

¶ 51　With respect to some rights, "admonishments by the trial court help to ensure that a defendant understands his rights and the consequences of any decision to waive those rights." *People v. Reid*, 2014 IL App (3d) 130296, ¶ 12. Many such admonishments are prescribed by our supreme court in order to protect defendants, including admonitions for waiver of right to counsel, admonitions upon a plea of guilty, and admonitions concerning appeal rights. *Id.* "Even where admonishments are prescribed, only substantial compliance—rather than strict compliance—is required." *Id.* Our supreme court has not prescribed any required admonishments with respect to waiver of the protections of Rule 402(f); as such, we look to the particular facts of each case, considering the entire record, including the background, experience, and conduct of the accused, to determine whether the waiver was knowingly and voluntarily made. *Lesley*, 2018 IL 122100, ¶ 51.

23

¶ 52    As a reviewing court, we may affirm the trial court on any basis appearing in the record. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 204 (2007). Here, while the language contained in a proffer agreement is certainly evidence as to whether a defendant has knowingly waived a right, it is not the outer limit of the analysis. The record makes clear that the defendant, a 19-year-old high school senior at the time of his arrest, signed the proffer letter upon the advice of his attorney, as testified to by Leeds and evidenced by the defendant's initials and Leeds's initials. Leeds, however, testified that the defendant remained highly concerned about the terms of the proffer letter. Nevertheless, the defendant was assured by Leeds that his proffer statement could only be used to impeach him if he testified at trial contrary to the proffer statement. Leeds further made clear at the hearing on the motion to suppress that, not only was that the explanation he provided of the proffer letter to the defendant at the time of the agreement, but it remained his understanding of the proffer letter as he testified at the suppression hearing. Leeds's testimony indicates that he did not fully understand the terms of paragraph four, and so he could not have explained those terms to the defendant.

¶ 53    In this case, the trial court held that the defendant's proffer statement could only be used to impeach him if he testified inconsistent with the statement. We agree with the trial court. Leeds consistently testified that he explained to the defendant that pursuant to the proffer letter, if he testified inconsistently, the proffer statement could be used to impeach him. We find that, in light of the testimony of Leeds and the trial court's ruling, the record supports that the defendant made a knowing waiver of the proffer statement for impeachment purposes only.

¶ 54    We hold that a defendant can waive the protections of Rule 402(f) to allow the State to impeach him at trial if he testifies contrary to statements made during plea discussions. We make no findings with regard to whether a defendant may agree to waive Rule 402(f) protections for

24

other purposes, and we make no findings with regard to the remainder of the waivers set forth in the proffer letter. Accordingly, we affirm the trial court's order limiting the State's use of the proffer statement to impeachment of the defendant if he testifies at trial.[1]

¶ 55                                    III. CONCLUSION

¶ 56    Based on the foregoing, we affirm the trial court's July 24, 2023, order holding that the discussion, wherein the defendant gave a proffer statement, was a plea discussion and finding that the defendant voluntarily waived his right to have that statement excluded for impeachment purposes if he testifies inconsistent with the statement at trial but did not waive that right for any other use at trial. Accordingly, we affirm the trial court's partial granting of the defendant's motion to suppress.

¶ 57    Affirmed.

---

[1]We note that the rules of professional conduct still apply, and defense counsel may not present evidence or argument on the defendant's behalf inconsistent with the defendant's proffer statement absent a good faith basis. Ill. R. Prof'l Conduct (2010) R. 3.3 (eff. Jan. 1, 2010).

25

*People v. Harvey*, 2026 IL App (5th) 230623

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 20-CF-177; the Hon. Robert B. Haida, Judge, presiding. |
| **Attorneys for Appellant:** | James A. Gomric, State's Attorney, of Belleville (Patrick Delfino and Patrick D. Daly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Ellen J. Curry, and Eun Sun Nam, of State Appellate Defender's Office, of Mt. Vernon, for appellee. |